UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA

| | | |
|---|---|---|
| STEPHEN L. SATTERWHITE, | * | |
| | * | |
| Plaintiff, | * | CASE NO. _____ |
| | * | |
| vs. | * | |
| | * | |
| CITY OF RED BANK, | * | JURY DEMAND |
| | * | |
| CHIEF OF POLICE TIM CHRISTOL, | * | |
| In his official capacity as an agent and | * | |
| Chief of Police for the City of Red Bank, | * | |
| Tennessee, and in his individual capacity, | * | |
| | * | |
| LIEUTENANT JAY LAMANCE, | * | |
| In his official capacity as an agent and | * | |
| Managing officer for the City of Red Bank, | * | |
| Tennessee, and in his individual capacity, | * | |
| | * | |
| Defendants. | * | |

## COMPLAINT

Comes Plaintiff and sues Defendants. For his Complaint, Plaintiff shows unto the Court as follows:

**Introduction:**

1. This is an action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988 to redress the deprivation of rights secured to the Plaintiff by the First and Fourteenth Amendments to the United States Constitution, the Tennessee Human Rights Act (THRA), the Public Employee Political Freedom Act (PEPFA), the Tennessee Public Protection Act (TPPA), the Uniformed Services Employment and Reemployment Rights Act (USERRA) and the commons laws of the State of Tennessee by the Defendants.

2. Plaintiff avers that the individually named agents of the City of Red Bank,

Tennessee ("City") deprived Plaintiff of his First Amendment rights without the due process of law.

3. Plaintiff avers that the individually named agents violated the Plaintiff's rights to Due Process of law and Equal Protection of Law.

4. Plaintiff also maintains that the individually named agents committed these violations and torts as a result of policies, customs, and/or procedures of the City.

5. The individuals included as Defendants aided or abetted in the offenses committed under the THRA and the PEPFA.

**Jurisdiction and Venue:**

6. This is, in part, an action to redress the deprivation of rights secured to the Plaintiff by the First and Fourteenth Amendments to the United States Constitution and of Equal Protection under the same constitution. This is also, in part, an action to address violations of the USERRA. Thus, this Court is vested with original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

7. Plaintiff invokes supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 and *United Mine Workers v. Gibbs,* 383 U.S. 715 (1966) over the Plaintiff's cause of action under the constitutional, common law, and statutory laws of the State of Tennessee in that the said laws form the same case or controversy.

8. Venue is proper in this Court, Chattanooga Division, pursuant to 28 U.S.C. § 1391(B). All acts complained of occurred within Hamilton County, a political sub-division of the State of Tennessee, and physically located within the fourteen county district of this Court.

   a. Plaintiff is a resident of Hamilton County, Tennessee.

   b. The City is a political sub-division of the State of Tennessee located in

Hamilton County, Tennessee.

**The Parties:**

9. At all times relevant to this cause of action, Plaintiff was a "member" of the Red Bank Police Department ("Department" or "RBPD").

10. At all times relevant to this cause of action, the City was a political subdivision of the State of Tennessee organized and existing under the laws of the State of Tennessee.

   a. The City finances its department and is required to provide rules and regulations for the operation of the department pursuant to Tenn. Code Ann. §6-54-123.

   b. The City is required to provide oversight of the discipline actions of the supervisory personnel of the department and to provide a forum for appeals of employment discipline against individual employees of the department.

   c. The City is required to ensure members of its Department are free from an abusive and hostile work place; from retaliation and intimidation for disclosing, investigating, and reporting the misconduct of other members of the department and the City government.

11. At all times relevant to this cause of action, the City is responsible for the creation and maintenance of the department, which is a law enforcement agency created under Tennessee state law and regulated by the laws of the State of Tennessee.

12. At all times relevant to this cause of action, the individually named agents were employed by the City and acted under the color of law, statute, ordinance, regulation, custom, or usage. In addition:

   a. At all times relevant to this cause of action Defendant Tim Christol

("Chief Christol"), acted in his official capacity as the personal representative of the City as the Chief of Police responsible for the administrative and operational oversight of the department. Chief Christol acted in his official and individual capacities in the misconduct herein described, Plaintiff sues this defendant in his individual and official capacities.

b.    At all times relevant to this cause of action Defendant Jay Lamance ("Lt. Lamance"), acted in his official capacity as the personal representative of the City as the second in command and, in all practicality, the acting Chief of the Department responsible for the administrative and operational oversight of the department. Lt. Lamance acted in his official and individual capacities in the misconduct herein described, Plaintiff sues this defendant in his individual and official capacities.

**Factual Basis of Complaint:**

13.    Plaintiff began working for RBPD as a patrol officer in April of 2000. Prior to working for RBPD, he served as a police officer for the Soddy Daisy Police Department. Plaintiff graduated from the police academy in 1996.

14.    During the time that Plaintiff worked for the RBPD he heard a number of individuals make prejudicial comments about African Americans.

15.    Until recently, Isaac Cooper ("Off. Cooper") was the only African American officer.

16.    Plaintiff heard officers use the word, "N-i-*-*-e-r" ("N" word) on multiple occasions.

17.    Five or Six years ago Officer (and now Detective) Doug Millsaps (Det. Millsaps) routinely used the "N" word at work. He was a supervisor at the time. Both he and Off. Cooper applied for a detective job and when it was awarded to Off. Cooper, he went around saying "I

always figured they would give it to an 'n'." Plaintiff reported that to the chain of command.

18. Although an investigation was undertaken on that one comment, to which Det. Millsaps admitting making and he was demoted to a patrol job, he has continued to routinely use the "N" word at the department. Plaintiff has observed him use it in the presence of Off. Cooper, Chief Christol, Lieutenant Jay Lamance ("Lt. Lamance"), and others.

19. RBPD requires officers to provide them with their facebook identifications and passwords for the RBPD can routinely check their pages for offensive materials.

20. Certain officers have been asked to take down photographs of themselves in uniform or while drinking alcohol.

21. Det. Millsaps has several racist pictures prominently posted on his facebook page that the RBPD has never asked him to remove. One is a picture of him standing in front of a picture of Nathan Bedford Forrest, the founder of the KKK. The other is a picture of him in front of a confederate soldier. Finally, he has a picture of himself standing in front of a celtic cross, which, in conjunction with the other pictures, is commonly used as a symbol for white supremacy.

22. Plaintiff has also heard Lt. Lamance use the "N" word.

23. On one occasion, Det. Millsaps' young son came to the department and, pointing to Coooper, asked, "what is that 'N' doing here?" He did not abbreviate "n" when he said it.

24. Det. Millsaps has since been promoted into a detective position.

25. Plaintiff has heard Det. Millsaps use the "N" word as recently as several months ago.

26. Plaintiff has heard Staff Sergeant and then Interim Chief Dan Knight ("Sgt. Knight") use the "N" word.

27. Recently the RBPD, upon information and belief, assigned Off. Cooper some training duties. However, the only officer they have allowed him to train is a new hire, Officer

Ballard, who is African American.

28. When Off. Ballard was sworn into duty for the RBPD, Off. Cooper was present in Court, as was Plaintiff. During the ceremony, which was conducted by City Judge Johnny Houston, Houston commented that now Off. Cooper would have someone to talk to at the RBPD.

29. Plaintiff also heard a number of comments from officers and ranked officers indicating that RBPD had a preference for younger officers.

30. Plaintiff is over the age of 40.

31. Plaintiff personally heard Sgt. Knight, for example, indicate that he wants young officers. Sgt. Knight has made that comment in this presence of City Manager Dorsey.

32. Plaintiff also heard Lt. Lamance, in the presence of City Manager Dorsey, say that it is good to have young people on the force.

33. After Off. Cooper was denied a promotion, Plaintiff heard Corporal Shane Dockery say that it was because he was too old and too slow because of his age.

34. In 2010, several officers initiated an investigation with the Red Bank City Commission ("RBCC") relating to the Chief of Police Larry Sneed.

35. Plaintiff participated in that investigation and, as part of his involvement, he spoke to Commissioner John Roberts.

36. During the course of that investigation, Plaintiff reported to the commissioners the age-biased comments he had heard within the RBPD.

37. During the course of that investigation, Plaintiff also reported unlawful activities of the RBPD and Chief Sneed relating to a DUI arrest undertaken by Officer Delashmitt ("Off. Delashmitt"). At the time of that unlawful arrest Plaintiff was one of Off. Delashmitt's supervisors.

38. Plaintiff reported to the commissioners that the arrest log book relating to that DUI

arrest had been falsified to make it appear as though Off. Delashmitt did not make the arrest. Specifically, the suspects name and the DUI testing was white out completely. Plaintiff and other officers had been trained and instructed not to do that is the past because it is an official legal document. That had always been instructed that if revisions were necessary, they were to draw a line through it and initial it rather than making it appear as though it had never occurred.

39. Upon information and belief, Sneed participated in the destruction or alteration of official documents. Plaintiff reported that to the RBCC and believed that it was Official Misconduct in violation of Tenn. Code Ann. § 39-16-402

40. Plaintiff also reported a concern he had about how certain officers who were serving in the military were being discriminated against due to their service and training requirements. Plaintiff believed that was in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301, et seq.

41. Plaintiff also attended the RBCC meeting in which Chief Sneed's termination was discussed. Lt. Lamance and Chief Sneed attended that meeting and were aware of which officers who were involved in the investigation.

42. After Chief Sneed's termination, Plaintiff worked security at a Red Bank High School football game. Chief Sneed's wife was in attendance and held up her middle finger at Plaintiff. Several days later, Plaintiff ran into Chief Sneed at the grocery store and Plaintiff asked Chief Sneed about his wife's gesture. Chief Sneed responded by saying that he had been told that Plaintiff had him fired by talking to the RBCC.

43. In the course of the investigation undertaken by the RBCC, a number of officers, including, but not limited to Plaintiff, Brad Hanon, Rebecca Chauncy (now Rebecca Morgan), Stoney Morton, Isaac Cooper, Steven Meador, and Jeff Chastain all spoke to the RBCC to raise

44575                                                                 7
Case 1:11-cv-00323-WBC   Document 1   Filed 11/08/11   Page 7 of 15   PageID #: 7

concerns about Chief Sneed and his improper and unlawful activities.

44. Prior to his complaints and communications, Plaintiff had a clean employment record.

45. Upon information and belief, all of the individuals who spoke with the RBCC about Chief Sneed have since been retaliated against.

46. Chief Sneed had a number of close friends in the department who remained in the department after his termination. Those individuals include Lt. Lamance, Staff Sergeant (and later Interim Chief) Dan Knight, Detective Michael Ray, Officer John Wright, and Investigator Shane Dockery, and Investigator Hope.

47. Since Chief Sneed's firing, those individuals have been given authority to make employment decisions or recommendations at the RBPD.

48. After Sneed's termination and after Plaintiff filed his Complaint in the above-styled case, Sgt. Knight began a series of shift changes of those officers who made complaints to the RBCC.

49. Upon information and belief, Sgt. Knight drilled certain officers about whether they were involved in getting Sneed terminated.

50. Upon information and belief, Det. Dockery made comments about how "they" were going to retaliate against all of the "mf's" who were involved in getting Sneed fired. Plaintiff also heard Det. Dockery say around that time that he "worked with a bunch of back-stabbing 'mf's'."

51. After Chief Sneed was terminated, Plaintiff reported to Lt. Lamance, who began nitpicking his performance.

52. In February of 2011, Plaintiff was given a one-day suspension due to "public

comments" that he allegedly made about the police department as reported by Lt. Lamance.

53. The RBPD refused to specify what the public comments were that Plaintiff allegedly made.

54. At that time, Plaintiff was also assigned to a different shift, was required to undergo additional training, and was put on probation for a 60-day period. Plaintiff also lost his take-home car at that time and was forced to purchase a vehicle as a result.

55. During Plaintiff's 60-day probation period he received favorable evaluations.

56. Suddenly, at the end of July of 2011, Plaintiff received a letter claiming that he was making "public statements about the RBPD" and was demoted as a result. Plaintiff was demoted two steps from a Sergeant to a Patrol Officer. He experienced a decrease in pay of almost $3.00 per hour as a result. He also received a total of five days of suspension without pay.

57. Plaintiff was also informed that part of the reason for the July of 2011 demotion was because he was allegedly talking bad about other officers.

58. Plaintiff received no prior warning about the issues raised in the July of 2011 letter.

59. In late August of 2011, Corporal Noorbergen made derogatory comments about Off. Cooper's age and speed to others that Plaintiff reported to the RBPD. To his knowledge, the RBPD did not give Corporal Noorbergen any discipline for making those comments. Corporal Norbergen was not involved in the RBCC investigation relating to Chief Sneed.

60. Since his demotion, a number of new young officers have been hired and immediately promoted into supervisor positions.

61. As a result of Defendants' conduct, Plaintiff has lost income and other privileges and benefits of employment, has suffered embarrassment, humiliation, stress, anxiety, inconvenience, damage to his reputation and standing in the community, and loss of enjoyment

44575                                                                 9
Case 1:11-cv-00323-WBC   Document 1   Filed 11/08/11   Page 9 of 15   PageID #: 9

of life, and has incurred attorneys' fees and expenses.

62. Defendant is responsible for the acts of its supervisory agents.

## COUNT ONE: 42 U.S.C. §1983

63. The agents acted under color of law, and at the time of such occurrence, acting by virtue of or under color of the office, and their negligence and intentional acts deprived the Plaintiff his rights secured to him under the United States and Tennessee Constitutions as follows:

   a. Procedural Due Process;

   b. Equal Protection of law;

   c. Freedom of Speech.

64. Defendants Lt. Lamance and Chief Christol's actions and omissions in their direct involvement constituted ratification and approval of their joint and unlawful actions.

65. City has a policy practice, or custom to improperly investigate employee complaints of a hostile work environment, reports of police corruption, and police criminal conduct. This failure constitutes a policy, practice, or custom of deliberate indifference. The direct involvement of Lt. Lamance and Chief Christol reveals this as a policy practice, or custom of the City as these defendants are the highest level of policy-makers for the City.

66. The City has a policy, practice, or custom to tolerate the abuse of employees who complain or otherwise attempt to assert rights by its employees to proper process to appeal their disciplinary actions. This failure constitutes a policy, practice, or custom of deliberate indifference. The direct involvement of Lt. Lamance and Chief Christol reveals this as a policy practice, or custom of the City as these defendants are the highest level of policy-makers for the City.

67. The City has a policy, practice, or custom to fail to investigate allegations of police misconduct.

68. Consequently, the actions stated in this Complaint created an environment that allowed the individual defendant agents, and the other named persons in this Complaint to believe that their abusive behavior would not be properly monitored, investigated, nor punished, and that any employee who reported such misconduct would suffer retaliation, both insidious and overt, all of which also constitutes deliberate indifference to the welfare of plaintiff and the public at large.

69. Plaintiff avers that such actions and omissions on the part of all the Defendants constitutes a conspiracy violation of this law and were done to deprive the Plaintiff of the following rights established under the United States Constitution:

    a. The right not to be deprived of life, liberty, or property without Due Process as secured to him by the Fourteenth Amendment;

    b. Equal Protection of Law;

    c. Freedom of Speech in that the Defendants took unlawful action to silence Plaintiff's protected complaints and disciplined him for allegedly making public comments about the RBPD or its officers.

70. The actions of the individual defendants and the City were done with actual malice toward the Plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights and statutory civil rights of the Plaintiff. Thus the Plaintiff is entitled to punitive damages, actual damages, and attorney fees pursuant to 42. U.S.C. § 1988.

71. The City had a duty of care to the Plaintiff to ensure that its agents were properly trained in the administration of discipline, to include *"Loudermill"* hearings, and to provide

Plaintiff a fair and unbiased mechanism in which to address grievances. This failure constitutes a policy, practice, or custom of deliberate indifference.

72. As a result of these violations, Plaintiff suffered damages.

## COUNT TWO: MALICIOUS HARASSMENT

73. The acts and omissions of the Defendants as stated in this Complaint were outrageous, designed to humiliate the Plaintiff, and resulted in Plaintiff's humiliation, mental anguish, discipline and eventual demotion.

74. The acts and omissions of Defendants constituted violations of Tenn. Code Ann. § 4-21-701 in that the Defendants engaged in harassment of Plaintiff for Plaintiff's attempts to take action against the misconduct of officers in the department.

75. As a result of these unlawful activities, Plaintiff suffered damages.

## COUNT THREE: PUBLIC EMPLOYEE POLITICAL FREEDOM ACT (PEPFA)

76. Plaintiff's exercise of his right to communicate with elected and other public officials was a substantial or motivating factor in the discipline, threats of discipline, retaliation, demotion, and other discrimination that Plaintiff faced, all of which is in violation of Tenn. Code Ann. §8-50-603, *et seq.*

77. As a result, he is entitled to compensatory damages, treble damages and attorney's fees.

## COUNT FOUR: THRA

78. Plaintiff was discriminated against on the basis of his age in violation of Tenn. Code Ann. § 4-21-301, et seq.

79. The discrimination was a continuing action.

80. Plaintiff complained about the age discrimination to the RBCC.

81. In response, Plaintiff was retaliated against in violation of Tenn. Code Ann. § 4-21-301.

82. Plaintiff additionally faced a hostile work environment on the basis of his age and protected activity, in violation of Tenn. Code Ann. § 4-21-301.

83. Plaintiff opposed a practice and aided in the investigation of a practice declared discriminatory by the THRA in reporting the racial comments directed towards African Americans and in reporting the age-biased comments.

84. Plaintiff faced retaliation as a result.

85. As a result, Defendants have violated Tenn. Code Ann. § 4-21-301, et seq.

86. Plaintiff has suffered damages as a result.

### COUNT FIVE: VIOLATION OF THE USERRA

87. Plaintiff complained about unlawful treatment of officers who were also members of the uniformed services in violation of the USERRA.

88. In the alternative, Plaintiff had a good faith belief that the matters about which he complained to the RBCC were in violation of the USERRA.

89. After his complaint and reports to the RBCC, he faced discrimination, retaliation, discipline and a demotion that was motivated by activity protected under the USERRA.

90. As such, Defendants violated 38 U.S.C. § 4311(b) and 4301 et seq.

### COUNT SIX: VIOLATION OF THE TENNESSEE PUBLIC PROTECTION ACT
### ALTERNATIVE CLAIM

91. The hostile treatment, discipline, and eventual demotion of Plaintiff violated the provisions of the Tennessee Public Protection Act, Tenn. Code Ann. § 50-1-304, in that the

actions were solely motivated by Plaintiff's refusal to remain silent about or refusal to engage in unlawful activities as detailed herein.

92. Defendants' unlawful violation of, among other laws, the Tennessee code provisions and federal regulations relating to Official Misconduct, Tenn. Code Ann. § 39-16-402; and Defendant's violation of the THRA, Tenn. Code Ann. § 4-21-301, et seq., and Defendant's violation of the USERRA, and the substantive violations constituting Plaintiff's allegations under 42 U.S.C. § 1983 posed a risk of serious harm to the general public.

93. Plaintiff has suffered damages as a result.

WHEREFORE, the Plaintiff demands judgment against the Defendants and requests the following relief:

A. That the Defendants be served a copy of this Complaint and be required to answer as required by the Federal Rules of Civil Procedure;

B. That the Court issue an injunction requiring Defendant to re-employ Plaintiff at an equivalent job with all employment rights and benefits to which he would have been entitled but for his demotion, and without harassment or illegal condition imposed on his job, or, in the alternative, front pay and benefits in lieu of reinstatement.

C. That the Court award compensatory damages, and damages for mental anguish, and punitive damages;

D. That the Court award attorney's fees under 42 U.S.C. § 1988, the PEPFA, the THRA, and other applicable law;

E. That the Court award treble damages under the PEPFA;

F. That the Court award costs, and discretionary costs;

G. Any other relief the Court may deem fit and proper; and

H.   Allow a jury trial on all issues triable by jury.

Respectfully submitted,

BURNETTE, DOBSON & PINCHAK

By: _____
Harry F. Burnette, BPR# 004803
Frank P. Pinchak, BPR# 002094
Donna J. Mikel, BPR# 020777
Attorneys for Plaintiff
711 Cherry Street
Chattanooga, TN 37402
Phone: (423) 266-2121